UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

MIGUEL CEJA,

                                        Plaintiff,

                    - against -

PAUL VACCA, Deputy Commissioner and Building
Official of the City of New Rochelle, and
THE CITY OF NEW ROCHELLE,

                                        Defendants.
------------------------------------------------------------------------X

**COMPLAINT**

**JUDGE MOTZ**

**JURY TRIAL
DEMANDED**

**11  CV  0166**

The plaintiff, MIGUEL CEJA (hereinafter "Ceja"), by and through his counsel,

FRIEDMAN HARFENIST KRAUT & PERLSTEIN LLP, complaining of the defendants, PAUL

VACCA, Deputy Commissioner and Building Official of the City of New Rochelle, and THE

CITY OF NEW ROCHELLE (hereinafter collectively the "Defendants"), respectfully alleges as

follows:

### INTRODUCTION

1.      The instant action seeks damages and equitable relief from Defendants for

improperly revoking Ceja's Certificate of Occupancy (hereinafter "C of O") for his property

based on alleged noncompliance with parking requirements under the New Rochelle Zoning

Ordinance. Because the revocation of Ceja's C of O constitutes a deprivation of Ceja's property

interest without due process of law, such revocation is unconstitutional.

2.      Ceja also seeks a declaration from the Court confirming, *inter alia*, his right to

utilize and enjoy his real property as two-family residence with a legal non-conforming

commercial vehicle garage that has been in existence for many years.

AF/D101557/FL1963W

## JURISDICTION AND VENUE

3.  Ceja's claims against the Defendants are brought pursuant to 42 U.S.C. §1983.

4.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331.

5.  Venue in this District is proper pursuant to 28 U.S.C. §1391(b) in that all Defendants reside in and the property that is the subject of this action is situated in the Southern District of New York.

## PARTIES

6.  Ceja is an individual and resident of the City of New Rochelle, State of New York.

7.  The defendant, City of New Rochelle (hereinafter the "City"), is a political subdivision of the State of New York duly organized and existing under the laws of the State of New York.

8.  The defendant, Paul Vacca (hereinafter "Vacca"), is the Deputy Commissioner and Building Official (hereinafter the "Building Official") for the City.

9.  The Building Official, pursuant to §111-5 of the City's Municipal Code, is the code enforcement official for provisions that relate to the construction and repair of structures in the City. The Building Official is the head of the Bureau of Buildings of the City of New Rochelle.

10.  Upon information and belief, Vacca, who is a public officer of the City, and who at all relevant times herein was the Deputy Commissioner and Building Official, administers, supervises, manages, coordinates, and enforces the zoning laws, applicable local laws, ordinances, rules, and regulations of the City.

AF/D101557/FL1963W

11.     Upon information and belief, Vacca, as Building Official, is a public officer of the City, charged with the power and authority to administer and enforce the City's zoning ordinances and charged with the issuance of Certificates of Occupancy which, *inter alia*, certify the permitted usage of buildings located within the City.

## STATEMENT OF FACTS

12.     In 2002, Ceja obtained title to the improved real property located at 308 Washington Avenue, New Rochelle, New York (hereinafter the "Premises").

13.     The detached garage at the Premises has been used as a commercial garage since the 1920s.

14.     The City has acknowledged and allowed the use of the Premises as a commercial garage since at least 1958, which was demonstrated by the issuance of a Certificate of Occupancy in that year which detailed the legal non-conforming use and the permitted continuation of such uses and is duly noted on the property record card maintained by the Bureau of Buildings.

15.     In or about 1973, the City's Board of Standards and Appeals (hereinafter the "BSA") granted an application for variances regarding fire safety standards allowing the conversion of the one-family house on the Premises to a two-family house.

16.     The BSA's approval contained no declaration that the legal non-conforming use had been abandoned or ceased.

17.     In or about 1974, following the completion of lawful work at the Premises to convert the dwelling to a two-family residence the City issued a Certificate of Occupancy for the conversion of the dwelling.

AF/D101557/FL1963W

18.     Upon information and belief, at the time the Certificate of Occupancy was issued for the conversion of the dwelling the detached garage at the Premises continued to be used for storage of commercial vehicles as evidenced by the records maintained and permits issued by the City of New Rochelle Fire Department.

19.     Prior to a sale of the Premises in 1989 to Ceja's predecessor, significant due diligence was performed that indicated that the commercial garage at that time enjoyed a legal non-conforming use.

20.     Upon information and belief, as a result of the due diligence performed by the broker for Ceja's predecessor in ownership a note was added to the property record card maintained by the Bureau of Buildings further confirming the commercial use of the garage.

21.     In 1990, the City of New Rochelle Zoning Board of Appeals (hereinafter the "ZBA") issued a resolution, in part, denying an application by Ceja's predecessor in ownership to construct an office above the garage on the Premises.

22.     The ZBA's resolution specifically acknowledged the legal non-conforming use of the Premises as a commercial garage.

23.     Since acquiring the Premises in 2002, Ceja has continued to maintain the use of the principal structure as a two-family residence and the legal non-conforming use of a commercial garage pursuant to the Certificates of Occupancy for the structures.

24.     Relying on the City's representation and its lawfully issued Certificates of Occupancy, which specified the Premises' two-family residence and legal non-conforming use as a commercial garage as lawfully permitted, Ceja has invested substantial sums of money to acquire the property make non-structural improvements and has caused the garage at the

Premises to be commonly used and occupied as a two-family residence and detached commercial garage from the date he obtained title until the present.

25.     In 2008, Ceja applied for and was issued a new Certificate of Occupancy for the two-family residence by the City to cover the replacement of sheet rock and insulation on the Premises.

26.     At the time this Certificate of Occupancy was issued the garage was being used for storage of commercial vehicles.

27.     On or about August 21, 2009 and August 28, 2009, Ceja was issued two summonses numbered 38464 and 38647 (hereinafter the "Summonses") for a commercial vehicle violation pursuant to §331-11-A of the City's Zoning Code.

28.     Ceja was issued the Summonses for the use/storage of commercial vehicles at the Premises.

29.     A trial has occurred on the Summonses in the City Court for the City of New Rochelle.

30.     At trial, the City attempted to prove that the legal non-conforming use of the Premises as a commercial garage had been abandoned or extinguished at the time the residence was converted to a two-family structure.

31.     In a decision and order dated October 12, 2010, Acting City Justice Kevin J. Quaranta (hereinafter "Justice Quaranta") found for Ceja and stated that the City had failed to prove that the non-conforming use had been abandoned or extinguished and that it was the People's burden to prove Ceja's guilt therein beyond a reasonable doubt.

32.     Furthermore, Justice Quaranta found that Ceja raised the defense of non-conforming use by a substantial body of evidence that the City itself recognized the continuing

AF/D101557/FL1963W

non-conforming commercial use of the garage and that the evidence was uncontroverted by the City.

33.     Following the trial and decision in Ceja's favor, the City of New Rochelle sent Ceja a boilerplate inspection notice stating that Ceja may be in violation of the Certificate of Occupancy for the two-family structure.

34.     On or about January 3, 2011, Ceja's attorneys wrote to Vacca and advised him that Justice Quaranta's decision found that Premises continued to enjoy a legal non-conforming use for the commercial use of the garage and therefore rejected the notice and demanded written details of the alleged violation.

35.     On or about January 21, 2011, without responding to the letter sent to him by Ceja's attorneys on or about January 3, 2011, Vacca revoked the Certificate of Occupancy for the two-family house on the Premises due to supposed noncompliance with the zoning criteria of the City's Zoning Ordinance as it relates to parking requirements.

36.     This determination was made without giving any notice to Ceja that the City was contemplating a revocation of the Certificate of Occupancy and without giving Ceja any opportunity to be heard in opposition to any revocation.

37.     Defendants did not conduct a hearing nor did they have or present any credible and substantial evidence to support their burden of proof showing that the Premises legal non-conforming use as a commercial garage had been lost in order to satisfy the parking requirements for the two-family residence.

38.     No determination was ever made by a body having authority to legally alter the status of the structures at the Premises or the legal non-conforming use for a commercial garage.

39.    Ceja formally learned of the revocation of the Certificate of Occupancy for the two-family residence after the Defendants delivered a letter, dated January 21, 2011, to Ceja's attorneys stating that the Certificate of Occupancy had been revoked and that Ceja needed to either correct the violations or make an application to the ZBA for a variance.

40.    Upon information and belief, the only possible manner to correct the alleged violation of the Certificate of Occupancy for the two-family residence would be to abandon the commercial use of the garage.

41.    No accusatory instrument was ever served on Ceja indicating a violation of any provision of the New Rochelle City Code in connection with the two-family residence at the Premises.

42.    The purported cancellation of the Certificate of Occupancy and implied loss of the legal non-conforming use after the City Court found for Ceja was a deprivation of Ceja's vested property rights in the Certificates of Occupancy issued by the City of New Rochelle and the legal non-conforming use, and has severely prejudiced Ceja's property rights and subjected him to criminal prosecution.

### AS AND FOR A FIRST CAUSE OF ACTION
### AGAINST THE DEFENDANTS FOR DUE PROCESS VIOLATIONS

43.    Ceja repeats and realleges the allegations contained in paragraphs 1 through 42 as if more fully set forth herein.

44.    Section 1983 of Title 42 of the United States Code states, in relevant part:

> "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress."

AF/D101557/FL1963W

42 U.S.C. §1983.

45.     Defendants violated §1983 by revoking the Certificate of Occupancy and, by implication, the legal non-conforming use of the Premises without affording Ceja due process of law.

46.     Under the Constitution and laws of the State of New York, the established status of the Premises as a two-family residence with a legal non-conforming commercial garage, as evidenced by various lawfully issued certificates of occupancy, is a protectable property interest, and such property interest may not be revoked, modified, or otherwise adversely affected without due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution, U.S. Const. Amend. XIV, §1.

47.     Defendants, however, acting as a matter of official City policy and under color of law, unilaterally revoked the Certificate of Occupancy for the two-family residence and, in effect, revoked the Premises' status as a legal non-conforming commercial garage without giving any notice to Ceja, without giving Ceja any opportunity to be heard, without conducting any hearing, and without making any determination based upon credible and substantial evidence.

48.     Defendants failed to provide Ceja with a pre-deprivation hearing where doing so would not be unreasonably burdensome.

49.     Defendants have thus deprived Ceja of his protectable property interest without due process of law.

50.     Defendants' unlawful actions, unless nullified by this Court, therefore: (i) have adversely affected the value of the Premises, as either the use of the two-family residence or the commercial use of the garage must be discontinued; (ii) have caused and will continue to cause Ceja to lose income from the Premises as a result of the restricted use; and (iii) have forced and

AF/D101557/FL1963W

will continue to force Ceja to expend substantial sums of money for attorney's fees, costs, and expenses in attempting to establish his rights and the use of his real property.

51.     As a result of the foregoing, Ceja has been damaged and continues to be damaged in an amount to be determined at trial.

### AS AND FOR A SECOND CAUSE OF ACTION
### AGAINST THE DEFENDANTS FOR A DECLARATORY JUDGMENT

52.     Ceja repeats and realleges the allegations contained in paragraphs 1 through 51 as if more fully set forth herein.

53.     A justiciable controversy has arisen between Ceja and Defendants in that Ceja maintains a two-family residence with a legal non-conforming use of the Premises, as confirmed by various lawfully issued certificates of occupancy, still exists and was never properly revoked in accordance with due process of law, and Defendants maintain the contrary.

54.     As a result of the foregoing, and under 28 U.S.C. §2201, Ceja seeks a declaration from the Court that: (i) the 2008 Certificate of Occupancy for the two-family residence is the last issued Certificate for the Premises; (ii) the garage at the Premises enjoys the status of a legal non-conforming commercial garage; (iii) any documents, letters, or notifications in the City records which hold to the contrary or adversely affect such status are null and void, of no force and effect, and must be removed therefrom; and (iv) Ceja has a clear legal right to utilize and enjoy the two-family residence and legal non-conforming commercial garage at the Premises.

55.     Defendants have an obligation to provide a pre-deprivation due process procedure out of duty before depriving a person of liberty or property without a hearing.

56.     Defendants have failed to provide any pre-deprivation hearing or any other form of due process to the damage of Ceja.

57.     Ceja has no adequate remedy at law.

AF/D101557/FL1963W

**AS AND FOR A THIRD CAUSE OF ACTION**
**AGAINST THE DEFENDANTS FOR A PERMANENT INJUNCTION**

58.     Ceja repeats and realleges the allegations contained in paragraphs 1 through 57 as if more fully set forth herein.

59.     Pursuant to Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §2202, and in accordance with the foregoing, Ceja seeks a permanent injunction preventing Defendants and their officers, representatives, and employees from taking any action against Ceja under any provision of the City Code to punish Ceja for, or prohibit Ceja from, using the two-family residence or the legal non-conforming commercial garage at the Premises in accordance with the Certificates of Occupancy or for using the Premises without a Certificate of Occupancy.

60.     Ceja has no adequate remedy at law.

WHEREFORE, Ceja respectfully requests that the Court render judgment as follows:

(i)     On the first cause of action, under the authority of 42 U.S.C. §1983, awarding Ceja damages in an amount to be determined at trial;

(ii)    On the second cause of action, declaring that:

    a.  The 2008 Certificate of Occupancy was the last valid Certificate for the Premises;

    b.  The Premises enjoys the status of a legal non-conforming commercial garage;

    c.  Any documents, letters, or notifications in the City records which hold to the contrary or adversely affect such status are null and void, of no force and effect, and must be removed therefrom; and

    d.  Ceja has a clear legal right to utilize and enjoy two-family residence and legal non-conforming commercial garage at the Premises;

(iii)   On the third cause of action, permanently enjoining Defendants and their officers, representatives, and employees from taking any action against Ceja under any provision of the

AF/D101557/FL1963W

City Code to punish Ceja for, or prohibit Ceja from, using the two-family residence or the legal non-conforming commercial garage at the Premises in accordance with the Certificates of Occupancy or for using the Premises without a Certificate of Occupancy;

(iv)   On the third cause of action, a determination that Defendants violated Ceja's rights to procedural due process pursuant to the Fourteenth Amendment of the United States Constitution;

(v)   Awarding Ceja reasonable attorney's fees pursuant to 42 U.S.C. §1988;

(vi)   Awarding Ceja the costs and disbursements of this action; and

(vii)   Granting Ceja such other and further relief as this Court deems just, proper, and equitable under the circumstances.

## JURY DEMAND

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 38(b) Ceja hereby demands a trial by jury.

Dated: Lake Success, New York  
      March 9, 2011

Respectfully,

FRIEDMAN HARFENIST KRAUT & PERLSTEIN LLP  
*Attorneys for Plaintiff*  
2975 Westchester Avenue, Suite 415  
Purchase, New York 10577  
(516) 355-9600

By: _____  
           Steven J. Harfenist

AF/D101557/FL1963W